## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRISTINA GORDILLO, O/B/O G.L.P[1]

            Plaintiff,

vs.

COMMISSIONER of SOCIAL
SECURITY,

            Defendant.

)
)
)
)
)
)
)
)
)

Civil No. 3:20-cv-00076-GCS

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for supplemental security income ("SSI") pursuant to 42 U.S.C. § 1382c and 20 C.F.R. § 416.924.[2]

### PROCEDURAL HISTORY

Plaintiff, a minor child, filed an application for SSI through his mother, Cristina Gordillo, on January 26, 2016. (Tr. at 207). The State Agency denied both the initial application and a request for reconsideration. (Tr. at 104, 111). Plaintiff filed a written

---

[1]     Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]     This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 15).

request for a hearing shortly thereafter. (Tr. at 116). In November 2018, Plaintiff and Ms. Gordillo attended a hearing before an administrative law judge ("ALJ"). (Tr. at 67-71). The ALJ issued an unfavorable decision in December 2018, and Plaintiff requested that the Appeals Council review the decision in February 2019. (Tr. at 12-36, 205-206). The ALJ's decision became final when the Appeals Council rejected Plaintiff's petition for review in November 2019. (Tr. at 1).

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue on appeal:

1.  A child functionally equals a listing if he or she has marked limitations in two of six domains of functioning. The ALJ agreed G.L.P. had a marked limitation in acquiring and using information. The ALJ found less than a marked limitation in attending and completing tasks. The issue is whether the ALJ's representations of the record and failure to consider evidence contrary to his findings of a less than marked limitation in attending and completing tasks constitutes substantial evidence to support his findings in that regard.

## APPLICABLE LEGAL STANDARDS

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), a minor child is considered disabled if that child "has a medically determinable physical or mental impairment, which results in marked and severe limitations" in a number of listed areas of impairment. 42 U.S.C. § 1382c(a)(3)(C)(i). In order to determine whether a child is impaired, the ALJ applies a three-step, sequential

inquiry: (i) whether the child engaged in substantial, gainful activity; (ii) whether the child has a medically determinable impairment which is severe; and (iii) whether these impairments meet, medically equal, or functionally equal an impairment described in the listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R § 416.924 (b)-(d). If the ALJ first determines that the child is engaged in substantial, gainful activity, the proper determination is that the child is not disabled, regardless of the medical findings. *Id.* at (b). If the ALJ determines that the child is not engaged in substantial, gainful activity, but also determines that the child does not have a medically determinable impairment which is severe, then the proper determination is that the child is not disabled. *Id.* at (c). Lastly, only if the ALJ first determines that the child is not engaged in substantial, gainful activity and that the child does have a medically determinable impairment which is severe, does the ALJ finally determine whether that impairment meets, medically equals, or functionally equals a listed impairment. *Id.* at (d).

If a child's impairments do not meet or medically equal one of the listed impairments, the ALJ may nevertheless determine that the child's impairments functionally meet one of the listed impairments. *See* 20 C.F.R. § 416.924(d). The ALJ makes this determination by rating the child's degree of limitation in six functional domains, including: "(i) [a]cquiring and using information, (ii) [a]ttending and completing tasks, (iii) [i]nteracting and relating with others, (iv) [m]oving about and manipulating objects, (v) [c]aring for [him or her]self, and (vi) [h]ealth and physical well-being." 20 C.F.R. §

416.926a(b)(1). An impairment functionally equals a listed impairment either when it causes marked limitations in two of the domains, or when it causes extreme limitations in one domain. *See* 20 C.F.R. § 416.926a(a).

A marked limitation is the equivalent of functioning expected from those with "standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). Practically, a marked limitation seriously interferes with a child's ability to begin, sustain, or complete activities. *Id*. Similarly, an extreme limitation is the equivalent of functioning expected from those with standardized testing scores which are at least three standard deviations below the mean. *Id*. at (e)(3). Although an extreme limitation represents the worst limitation, finding such a limitation does not require that a child exhibit a complete loss of functioning. *Id*. at (e)(3)(i).

It is important to recognize that the scope of judicial review in SSI appeals is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Even though judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the three-step analytical framework described above. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application for SSI on January 25, 2016. (Tr. at 18). The ALJ also found that Plaintiff has the following severe impairments: oppositional defiant disorder, social phobia, anxiety, mood disorder, attention deficit hyper-activity disorder ("ADHD"), and speech and language impairment. *Id*. However, the ALJ noted that these impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

The ALJ also found that Plaintiff's impairments did not functionally equal those listed in the register. (Tr. at 19). Specifically, the ALJ determined that Plaintiff had a marked limitation in acquiring and using information, as Plaintiff had fair concentration, but poor short-term memory, reasoning, abstract thinking, judgment and ability to do

simple calculations. (Tr. at 26). However, the ALJ also found that Plaintiff had a less than marked limitation in attending and completing tasks. (Tr. at 27). Though Plaintiff was shy around adults, the ALJ noted that Plaintiff's treatment providers found improvement in this area. *Id*. Furthermore, the ALJ pointed out that Plaintiff was often absent from school, perhaps contributing to impairment in this area. *Id*. Finally, the ALJ also found less than marked impairments in interacting and relating with others (Tr. at 27), moving about and manipulating objects (Tr. at 28), caring for oneself (Tr. at 29), and health and physical wellbeing. (Tr. at 30).

### THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the sole point Plaintiff raises on appeal.

#### 1. Evidentiary Hearing

Plaintiff was represented by an attorney during the November 2, 2018 hearing, at which both Plaintiff and Ms. Gordillo testified. (Tr. at 781). Plaintiff claimed that he did some chores around the house and had As and Bs as grades. Ms. Gordillo, however, explained that Plaintiff was actually failing his classes and could not do chores or homework without significant assistance. (Tr. at 52-53, 808-809). Ms. Gordillo stated that though Plaintiff wants better grades, he can't focus or apply his attention in order to

succeed in school. (Tr. at 799). Plaintiff cannot complete homework without constant re-direction. (Tr. at 800).

When asked about his medications, Plaintiff explained that he takes pills which make him feel more "regular." (Tr. at 790). Ms. Gordillo testified that, at the time of the hearing, Plaintiff took ten milligrams of medication for his ADHD in the morning, ten more milligrams while he was at school, and another five milligrams when he came home from school. (Tr. at 801). Though Plaintiff originally took an extended-release version of the medication, he had recently switched to immediate-release because his initial medication was wearing off in the afternoon. (Tr. at 802).

### 2. Relevant School Records

Plaintiff's kindergarten teacher, Laurie Wright, provided a teacher's questionnaire regarding Plaintiff's school abilities in 2015. (Tr. at 219). Ms. Wright noted four serious problems in the domain of attending and completing tasks, including: (i) refocusing when necessary, (ii) completing class and homework assignments, (iii) completing work accurately and without mistakes, and (iv) working at a reasonable pace. (Tr. at 222). She also noted an obvious problem in carrying out multi-step instructions. *Id.* Although Ms. Wright noted significant difficulties for Plaintiff in this domain, she also stated that Plaintiff could concentrate and complete his work after taking his medication. (Tr. at 226). With intervention, Ms. Wright believed Plaintiff could make "wonderful" progress. (Tr. at 222).

Rachel Steibel, Plaintiff's first grade teacher, also provided a teacher's questionnaire. (Tr. at 359). According to Ms. Steibel, Plaintiff had no serious problems in the domain of attending and completing tasks; although, he did have an obvious problem in completing his work accurately and without mistakes. (Tr. at 361). Ms. Steibel noted Plaintiff's "unusual absenteeism," as Plaintiff had missed thirty-five days, or approximately 28% of the school year. (Tr. at 360). Ms. Steibel stated that Plaintiff "can't learn if [he is] not at school," and she also pointed out that Plaintiff was already behind after missing a substantial amount of school during the prior school year. *Id*.

In February 2016, during Plaintiff's first grade year, the school finalized an individualized education plan ("IEP") for Plaintiff. (Tr. at 515). During the testing for his IEP, Plaintiff seemed not to be paying attention. (Tr. at 517). The school concluded that Plaintiff was eligible for classroom accommodations, and Plaintiff thereafter began to receive seventy-five minutes of resource room help each week. (Tr. at 525, 587).

Plaintiff's third grade teacher, Rhonda Ray, noted two serious problems in the domain of attending and completing tasks: (i) Plaintiff's ability to organize his own things or materials and (ii) completing class and homework assignments. (Tr. at 305). Ms. Ray also noted three obvious problems in this domain. *Id*. These problems included: (i) focusing long enough to finish an assignment or task, (ii) completing work accurately and without mistakes, and (iii) carrying out multi-step instructions. *Id*. According to Ms. Ray, Plaintiff needed one-on-one attention in order to complete his work. *Id*.

In 2018, the school district reassessed Plaintiff's IEP. (Tr. at 317). When testing for his IEP, Plaintiff required additional time and repeated instructions. (Tr. at 320). The district concluded that Plaintiff continued to require additional assistance and specialized instructions. (Tr. at 331).

### 3. Relevant Medical Records

During a September 24, 2014 kindergarten physical, Plaintiff's physician, Dr. Mark Preuss, noted that Plaintiff was constantly moving and unable to focus. (Tr. at 458). However, nearly one month later, during an October 19, 2014 physical, Dr. Preuss found that Plaintiff's was nearly "100% transformed" after taking short-acting ADHD medication. *Id.* Dr. Preuss stated that this medication was also helping Plaintiff during school. *Id.*

Plaintiff next saw Dr. Harry Deppe, who found that Plaintiff had a "fair" ability to compete tasks in a timely and efficient manner. (Tr. at 482). During the examination, Plaintiff had "no difficulty" staying on task. (Tr. at 481). Dr. Deppe diagnosed Plaintiff with mild ADHD and oppositional defiant disorder. (Tr. at 482).

In August 2015, Plaintiff saw Dr. Preuss for his first grade physical. (Tr. at 624). Plaintiff was easily distracted during the examination, and Ms. Gordillo reported that his medication was wearing off in the afternoon. *Id.* Dr. Preuss prescribed Plaintiff a higher dose of his ADHD medication. (Tr. at 630). By January 2016, Plaintiff was doing "very well" with his ADHD medications. (Tr. at 607).

In June 2016, Plaintiff saw Dr. Fred Klug for a second consultative examination. (Tr. at 638). Dr. Klug noted Plaintiff's attention span as adequate. *Id*. He also found that Plaintiff's concentration was "fair." *Id*.

Plaintiff also began seeing nurse practitioner Sharon Jameson in June 2016. (Tr. at 656). Ms. Jameson noted Plaintiff had processing delays, which continued when she saw him again in July 2016. *Id*. By August 2016, Ms. Jameson had increased Plaintiff's prescribed medication doses because it was wearing off later in the day. (Tr. at 754). However, Ms. Jameson also noted that Plaintiff had better concentration and was able to follow instructions with fewer promptings. (Tr. at 648). In April 2017, Ms. Jameson stated that Plaintiff was doing well, and she maintained his medications as prescribed. (Tr. at 732, 736). However, by September 2017, Ms. Jameson again increased Plaintiff's ADHD medications after Ms. Gordillo reported receiving calls regarding Plaintiff's behavior from his school. (Tr. at 715, 718). By December 2017, Plaintiff's teachers reported that he was doing "okay" with attention, and Plaintiff and Ms. Gordillo informed Ms. Jameson that his medications were working well. (Tr. at 706, 709). Plaintiff and Ms. Gordillo again told Ms. Jameson that Plaintiff was doing well in August 2018; although, Ms. Gordillo noted that Plaintiff's medications were again beginning to wear off in the afternoon. (Tr. at 767).

Both Dr. Preuss and Ms. Jameson opined on whether Plaintiff had marked limitations in the domain of attending and completing tasks in December 2017. (Tr. at

665, 668). In his Functional Assessment, Dr. Preuss estimated that Plaintiff had a marked limitation in this domain. (Tr. at 665). However, Dr. Preuss also stated that he would defer to Plaintiff's parent and teachers regarding whether this limitation was marked. *Id*. Dr. Preuss also noted that medication was of "obvious benefit" to Plaintiff in this regard. (Tr. at 666). Ms. Jameson also found in her Functional Assessment that Plaintiff had a marked limitation in the domain of attending and completing tasks, noting that Plaintiff has trouble at school when he doesn't ask for help. (Tr. at 24)

In her Medical Source Statement – Mental, Ms. Jameson also found that Plaintiff had a marked limitation in attending and completing tasks. (Tr. at 669). Specifically, Plaintiff demonstrated limitations in his ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to maintain regular attendance and to be punctual; to work in coordination with or proximity to others without being distracted by them; and to complete his workday without interruptions from his symptoms. *Id*.

### 4. State Agency Opinion

During the State Agency review of Plaintiff's claim, Dr. David Voss opined that Plaintiff had a less than marked limitation in the domain of attending and completing tasks when Plaintiff is medicated. (Tr. at 80). On reconsideration, Dr. M.W. DiFonso affirmed Dr. Voss's opinion. (Tr. at 94).

### ANALYSIS

Plaintiff raises one argument on appeal: when deciding whether Plaintiff had a marked limitation in the domain of attending and completing tasks, the ALJ failed to explain his reasoning sufficiently. *See generally*, (Doc. 19, p. 13-17). Specifically, Plaintiff alleges that the ALJ improperly considered irrelevant factors in his decision (*Id.* at p. 13), that the ALJ failed to consider evidence which did not support his decision when evaluating Plaintiff's history of improvement in this domain (*Id.* at p. 16), and that the ALJ improperly weighed the functional assessments from Plaintiff's treating physicians and the teachers' questionnaires, such that the ALJ neglected to consider evidence from those sources which did not support his decision (*Id.* at p. 17). The Court finds that although the ALJ cited some irrelevant evidence in his explanation of his decision regarding Plaintiff's limitations in the domain of attending and completing tasks, this citation does not support remand. However, the Court also finds that the ALJ failed to explain sufficiently his findings regarding Plaintiff's history of improvement in the domain at issue and neglected to consider evidence which did not support his decision. Accordingly, the Court concludes that remand is appropriate.

When deciding an appeal of a decision to deny SSI benefits, an ALJ must adequately articulate his or her analysis so that others can follow the reasoning employed. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). This articulation assists both the applicant and later courts of appeal in understanding the decision, because

without an adequate explanation, "neither the applicant nor subsequent reviewers will have a fair sense" of how the ALJ weighed the evidence that was presented. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). In outlining the decision, the ALJ must "build an accurate and logical bridge" from the evidence to the conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

In building such a bridge, the ALJ must not only list the evidence considered, but also explain why that evidence supports the conclusion. Conclusory statements are insufficient in explaining the ALJ's decision. *See Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). For instance, in *Giles*, the ALJ summarily concluded that ". . . in all other domains and areas of functioning the claimant has some deficits, but is less than markedly limited." *Id.* The Seventh Circuit found this explanation was insufficient. *Id*.

Though the ALJ must explain the reasoning when deciding a case, the ALJ is not required to do so within the paragraphs explicitly considering a particular domain; an overall review of the evidence with reasoning that supports the conclusion at which the ALJ arrived is sufficient. For example, in *Buckhanon ex rel. J.H. v. Astrue*, the plaintiff argued that the ALJ's reasoning was insufficient because the ALJ failed to explain why the plaintiff did not meet or medically equal any of the listed impairments in the section of the decision so finding. No. 09-1633, 368 Fed. Appx. 674, 678 (7th Cir. Jan. 26, 2010). However, the ALJ had cited the listings she considered and examined evidence of the plaintiff's impairments in separate parts of the decision. *Id*. Reading the ALJ's decision as

a whole and with common sense, the Seventh Circuit found that the ALJ had sufficiently explained her decision. *Id*. at 679 (citing *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).

However, in order for the Court to analyze the ALJ's decision as a whole, the ALJ's explanation for the decision must support a common-sense interpretation of the conclusion. For example, in *Murphy v. Astrue*, the ALJ broadly discussed the testimony the plaintiff and his parent provided during the evidentiary hearing, the plaintiff's medical records and opinion of his doctor, behavioral assessments, teacher evaluations, the plaintiff's IEP, and the plaintiff's overall test scores. 496 F.3d 630, 632-633 (7th Cir. 2007). The ALJ found there was no marked limitation in attending and completing tasks and noted that the plaintiff's parent's testimony was not credible for speculative reasons. *Id*. at 633. Though the record provided substantial evidence that the plaintiff struggled in that domain, the ALJ did not address that evidence. *Id*. at 634. Instead, the ALJ found that the plaintiff "did not talk excessively, did not interrupt or intrude, did not move about unexpectedly, knew the answers to questions when called upon, was cooperative, had a good sense of humor, tried to follow the rules, and wanted to do well in his studies." *Id*. at 634-635. While the Seventh Circuit noted that "these traits may well be accolades" for the plaintiff, it also found the ALJ's listing of these traits did not explain "how or why they trump the evidence of his inability to attend and complete tasks." *Id*. at 635 (internal citations omitted). Taken together, these cases suggest that the Court must evaluate the

ALJ's decision as a whole, considering whether the ALJ cites evidence that supports his conclusion regarding the domain of attending and completing tasks specifically.

The standard for considering whether an ALJ properly weighed the evidence in the record is similar to the standard for determining whether an ALJ sufficiently explained his or her reasoning. Both standards are predicated on the logical connections made by the ALJ between the evidence and the conclusion. When considering witnesses providing medical testimony, a treating physician's opinion about the nature and severity of impairments are to be given controlling weight, if those opinions are supported by medically accepted clinical and laboratory diagnostic techniques and are consistent with substantial evidence in the record. *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). If the ALJ does not give the physician's opinion controlling weight, he or she must consider the length, nature, and extent of the treating relationship; the frequency of the physician's examinations of the plaintiff; the physician's specialties; the types of tests performed; and the consistency and evidentiary support of the opinion when weighing the opinion as evidence. *See Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). If the treating physician is too sympathetic with the plaintiff, and therefore too quickly finds disability; is inconsistent with a consulting physician's opinion; is internally inconsistent; or is based solely on the plaintiff's subjective complaints, the ALJ may discount the opinion. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). This

analysis is also required when the ALJ chooses to credit one physician's opinion over that of another. *See Moss*, 555 F.3d at 560.

Though an ALJ is entitled to rely on the opinion of State Agency reviewers, this reliance is only appropriate when the ALJ provides reasoning showing that the treating physician's opinion should be discounted. For instance, in *Ketelboeter*, the treating physician based his opinion "almost entirely" on the plaintiff's subjective complaints, and his conclusions were internally inconsistent. 550 F.3d at 625. The Seventh Circuit therefore found that the ALJ properly relied upon the opinions of doctors from the State Agency rather than the treating physician. *Id*. Similarly, in *Stephens v. Berryhill*, the ALJ properly relied on the opinions of doctors from the State Agency in the absence of an opinion from the plaintiff's treating physician. 888 F.3d 323, 329 (7th Cir. 2018).

When considering the opinion of a treating physician and a consulting physician, an ALJ may not apply a "sound-bite approach" to evaluating evidence where the ALJ considers only evidence which supports his or her decision. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)(citing *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982)). For instance, in *Scrogham*, the ALJ discounted one physician's report finding the plaintiff was disabled in favor of the opinion of a consulting doctor, who found that the plaintiff had a full range of motion. *Id*. However, the ALJ failed to note that the latter doctor's report contained internal inconsistencies regarding the plaintiff's range of motion. *Id*. By only addressing the portions of the report which favored the ALJ's decision, the ALJ erred. *Id*.

(citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)(finding that it "is not enough to address mere portions of a doctor's report")).

When considering non-medical evidence, the ALJ should generally "explain the weight given to these 'other sources'" according to factors outlined in 20 C.F.R. § 416.927. SSR 06-03p 71 F.R. 45593-03, 2006 WL 2263437, at *45595-45596 (Aug. 9, 2006).[3] These factors include the nature and extent of the relationship between the source of the evidence and the plaintiff, the sources' qualifications or expertise, the degree to which that source presents relevant evidence supporting his or her opinion, and whether that opinion is consistent with the other evidence available in the record. *Id*. Those involved in a plaintiff's education are considered sources of non-medical opinion evidence. *See* 20 C.F.R. § 416.902(j)(2).

An ALJ is not required to provide a comprehensive written evaluation of "every piece of evidence." *Diaz v. Chater*, 55 F.3d 300, 307-308 (7th Cir. 1995). Instead, the ALJ is required only to articulate his or her reasons at a minimum level. *Id*. Nevertheless, the ALJ must provide enough reasoning to show that the ALJ has not selected only evidence which favors the ALJ's opinion; the ALJ must "confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Just as the ALJ must provide reasoning connecting the

---

[3]     The Commissioner of Social Security rescinded this regulation for claims filed after March 27, 2017. However, because Ms. Gordillo filed this claim on Plaintiff's behalf in 2016, the regulation is still applicable in this case.

evidence to the overall conclusion, the ALJ must also provide sufficient explanation for the decision in choosing whether and how to weigh particular evidence.

The ALJ provides a brief paragraph explaining his findings in the context of his ruling regarding the domain of attending and completing tasks. (Tr. at 27). That paragraph states:

> The claimant's teachers stated that the claimant opined that the claimant was shy around adults. Ms. Jameson has been treating the claimant for problems in this area, and the record, discussed above, has shown improvement. The undersigned notes that the claimant is also frequently absent from school. Therefore, this evidence supports finding a less than marked limitation in attending and completing tasks.

(Tr. at 27).

However, the ALJ also discusses the evidence comprising the record before him prior to explaining his decision regarding this domain. Specifically, the ALJ outlined Plaintiff's medical and treatment history with each of his providers (Tr. at 22-23) and found that Plaintiff had "mostly mild findings" with treatment. (Tr. at 24). The ALJ also outlined Plaintiff's IEP and his teachers' opinions as stated in their teachers' questionnaires. (Tr. at 21-22, 23). The ALJ noted that Ms. Wright found Plaintiff could concentrate after taking his medications, though he needs some extra time to think about answers. (Tr. at 21). Further, the ALJ emphasized that Ms. Steibel found only slight to obvious problems in this domain, rather than serious problems. *Id.* Ms. Steibel also stated that Plaintiff "can't concentrate or finish assignments" without his medications. *Id.* However, Ms. Steibel also emphasized Plaintiff's absences as a significant factor in his

school performance, stating that "[y]ou can't learn if you aren't at school." *Id*. The ALJ also cited Ms. Ray's opinion that Plaintiff needs one-on-one help to complete assignments daily and that he often loses focus when working independently. (Tr. at 22). Finally, the ALJ outlined Plaintiff's IEP, but emphasized his participation in the speech-language pathology program to which he was assigned. (Tr. at 23).

Regarding Plaintiff's medical history, the ALJ emphasized that Plaintiff's medical providers noted consistent improvement when he was prescribed medication for his ADHD. (Tr. at 23). The ALJ also noted that during Plaintiff's 2015 visit to Dr. Preuss, his medication was increased and he appeared distracted; however, the ALJ emphasized that Dr. Preuss's notes stated that Plaintiff appeared to be antagonized by his younger sister. *Id*. Furthermore, the ALJ found that Dr. Klug noted only mild symptoms in Plaintiff, as did Ms. Jameson; the ALJ highlighted that Plaintiff had some processing delays, but was otherwise "within normal limits." (Tr. at 23-24).

The ALJ explained that he did not weigh either Dr. Preuss's or Ms. Jameson's functional assessments heavily because it did not comport to the "mild" findings both Dr. Preuss and Ms. Jameson noted in their examinations. (Tr. at 24). The ALJ also discounted Ms. Jameson's Mental Medical Source Statement because that form is typically used for adults; according to the ALJ, it offered little probative evidence regarding Plaintiff's limitations as a minor. *Id*. Finally, the ALJ explained that he heavily

weighed the findings of the State Agency representatives, who noted only mild to "occasionally moderate" limitations. (Tr. at 25).

According to Plaintiff, the ALJ insufficiently explained his reasoning when finding that Plaintiff had a less-than-marked limitation in the domain of attending and completing tasks. *See generally,* (Doc. 19, p. 13-20). First, Plaintiff asserts that the ALJ incorrectly considered Plaintiff's shyness around adults and frequent absences from school in this domain. *Id.* at p. 13. Plaintiff's ability to interact with others, including adults, is not relevant to whether Plaintiff can attend and complete tasks; instead, it is more applicable to the domain of interacting with and relating to others. *Id.* Similarly, although Plaintiff missed significant amounts of school, Plaintiff argues that his absences are irrelevant to whether he can complete or attend tasks. *Id.* Plaintiff instead asserts that these absences should be considered evidence of Plaintiff's limitations, because when considered as a whole, the absences show that Plaintiff often had to miss school for psychiatric or physical health appointments. *Id.* at 13-14.

Defendant responds by pointing out that while Plaintiff's shyness may be irrelevant to this domain, there is little evidence that the ALJ's decision would have been different had he not considered Plaintiff's shyness. (Doc. 32, p. 12)(citing *Fisher v. Brown*, 869 F.2d 1055, 1057 (7th Cir. 1989)(holding that remand is inappropriate unless there is reason to believe that remand would lead to a different result)). Furthermore, Defendant

asserts that the ALJ properly considered Ms. Steibel's opinion that Plaintiff's absences contributed to his limitations in his ability to attend and complete tasks. *Id*.

The ALJ's reference to Plaintiff's shyness contributes little to the Court's understanding of the ALJ's reason for finding a less-than-marked limitation in the domain of attending and completing tasks. Just as the plaintiff's polite demeanor and desire to do well in his studies were "accolades" for the plaintiff in *Murphy*, but did not contribute to the Seventh Circuit's understanding of the ALJ's decision, the Court notes that whether or not Plaintiff is shy has little bearing on his ability to attend or complete tasks. However, this is an insufficient reason to remand the ALJ's decision. Plaintiff's shyness is not the only reason outlined in the ALJ's decision for his finding in this domain. There is no evidence that if the Court remanded the decision on the basis of this sentence that the result would be different.

Similarly, though the ALJ's discussion of Plaintiff's limitations in the domain of attending and completing tasks only briefly mentions Plaintiff's absences, his overall report adequately evaluates Ms. Steibel's opinion regarding how those absences contributed to Plaintiff's struggles in the domain at issue. The ALJ quoted Ms. Steibel as noting that Plaintiff could not learn without being present in school. Ms. Steibel also noted that Plaintiff was already behind because he had missed a significant amount of school the prior year. The ALJ additionally indicates that Ms. Steibel is Plaintiff's first-grade teacher, thus explaining the nature of the relationship between her and Plaintiff, as

well as her area of expertise. Further, Ms. Steibel's opinion was uncontradicted by the opinion of Plaintiff's other teachers, who noted that Plaintiff needs one-on-one help, but does well when provided accommodations and when taking his ADHD medications. Taken together, this evidence supports the ALJ's conclusion that Plaintiff could improve in the domain of attending and completing tasks with more regular school attendance, wherein he could receive the one-on-one attention he needs to improve. Accordingly, the Court does not find that the ALJ failed to explain sufficiently his overall decision regarding Plaintiff's limitations in the domain of attending and completing tasks.

Plaintiff next argues that the ALJ's contention that Plaintiff had improved in the domain of attending and completing tasks with treatment is meritless. (Doc. 19, p. 14). Specifically, Plaintiff contends that all three teachers' questionnaires indicated that Plaintiff continued to struggle in this domain. *Id.* at p. 15-16. Ms. Wright noted a serious problem in many of the factors contributing to the domain of attending and completing tasks. *Id.* at p. 15.[4]  Though Ms. Steibel only found obvious problems in Plaintiff's abilities in this domain, she also stated that Plaintiff is unable to concentrate or finish his assignments without medications. *Id.* Finally, Ms. Roy identified serious problems in Plaintiff's abilities in this domain, including his ability to work without one-on-one instruction and assistance. *Id.* Furthermore, Plaintiff points out that his IEP testing in 2016 and 2018 indicate a similar pattern of improvement and regression, as Plaintiff required

---

[4]     Plaintiff asserts that a serious problem is akin to a marked limitation, with a "very serious problem" being equal to an extreme limitation.

assistance while completing testing during both sessions. *Id*. at p. 16. Together, Plaintiff claims that the teachers' questionnaires and Plaintiff's IEP testing show that Plaintiff had improved briefly in first grade, but then "lost traction" in this domain shortly after and thus stagnated in the third grade. *Id*. at p. 15-16.

In response, Defendant points out that Ms. Jameson noted only consistent improvements when she treated Plaintiff. (Doc. 32, p. 12). In 2016, Ms. Jameson noted that Plaintiff had significant improvements in impulsivity; she also found that Plaintiff had been improving after taking his ADHD medication. *Id*. (citing to Tr. at 744). In 2017, Ms. Jameson noted Ms. Gordillo's report that Plaintiff's teachers said he was doing "okay" in school; Ms. Jameson did not contradict the suggestion that Plaintiff was improving in her notes from that examination. *Id*. In 2018, Ms. Jameson recorded that Ms. Gordillo was interested in further medication management for Plaintiff in the afternoons, as it appeared that his medication was beginning to wear off at that time. *Id*. (citing to Tr. at 767). Defendant asserts that Ms. Jameson's records therefore show that Plaintiff's abilities in this domain were improving, with problems occurring only in the afternoon, when Plaintiff's medication would wear off. *Id*.

Although Ms. Jameson's reports, when considered individually, indicate that Plaintiff had shown improvement in managing his ADHD symptoms, the ALJ erred in failing to consider these reports in the broader context of Plaintiff's medication history. Ms. Jameson's finding that Plaintiff's symptoms worsened in the afternoons in 2018

mirrored her findings in 2017, when she noted that Plaintiff required a stronger dose of his ADHD medication in order to curb impulsive behavior. (*Compare* Tr. at 722 (increasing Plaintiff's medications in July 2017) *with* Tr. at 735 (noting in March 2017 that Plaintiff's behavior had improved with changes to his medications)).

Furthermore, the ALJ's analysis of Ms. Jameson's notes neglects to consider evidence that Plaintiff's improvement in the domain of attending and completing tasks was inconsistent. For instance, in 2017, Ms. Jameson recorded that Ms. Gordillo had heard Plaintiff was doing better in school, but also found that Plaintiff was still struggling to pay attention and listen; Ms. Gordillo also reported she had to "stay on him" in order to help Plaintiff complete his homework. (Tr. at 713). Similarly, Ms. Jameson noted in July 2017 that Plaintiff continued to struggle with meltdowns and impulsive behavior. (Tr. at 722). The ALJ did not address this evidence in his decision, instead briefly describing Ms. Jameson's records as evidence of "mild findings" and concluding that Ms. Jameson noted Plaintiff had improved in the domain at issue. (Tr. at 22, 27).[5] As in *Scrogham*, the ALJ here applied a "sound-bite" approach to the record, prioritizing portions of Ms.

---

[5]     Defendant claims that the ALJ discussed Ms. Jameson's record in more depth on page 26 of the transcript. (Doc. 32, p. 15). However, the ALJ does not discuss Ms. Jameson's record on that page. Instead, he considers Dr. Klug's findings when deciding whether Plaintiff has a marked limitation in the domain of acquiring and using information and explains the standards for evaluating limitations in the domain of attending and completing tasks. (Tr. at 26). The Court has carefully reviewed the ALJ's decision and cannot find a page on which the ALJ cited to the portions of Ms. Jameson's notes finding improvement in this domain, as Defendant claims. Nevertheless, even if the ALJ cited to these portions of the record, his decision in this area is still insufficient, as he does not explain why he considered this evidence, rather than the portions of Ms. Jameson's record which do not support his opinion.

Jameson's report which supported his decision, but neglecting to explain why the portions of her report which contradicted his decision were not considered.

In his final argument, Plaintiff asserts that the ALJ failed to weigh properly both Dr. Preuss's and Ms. Jameson's individual functional assessments, which found marked limitations in the domain of attending and completing tasks; Plaintiff further asserts that the ALJ mischaracterized the findings of the teachers' questionnaires. (Doc. 19, p. 17). Though the ALJ found the assessments inconsistent with what the ALJ characterized as "mostly mild" findings from the medical witnesses' examinations of Plaintiff, he did not explain why those findings were "mild." *Id*. Plaintiff alleges that the ALJ's opinion that Plaintiff's symptoms were "mild" during his examinations is a mischaracterization of the medical witnesses' findings. *Id*. Plaintiff also claims that the assessments were not inconsistent with the teachers' questionnaires. *Id*. While the ALJ claimed that the questionnaires showed "no findings indicative of marked limitations" in this domain (*Id*. (citing Tr. at 24)), two of the three teachers' questionnaires actually noted serious problems in many of the factors comprising the domain at issue. *Id*. The ALJ did not explain why these questionnaires did not indicate marked limitations in the domain of attending and completing tasks. *Id*. at p. 17-18.

The Court is cognizant of Defendant's response that it should not reweigh the evidence the ALJ considered in his decision. The ALJ determined that the evidence contained within Ms. Jameson's and Dr. Preuss's reports, namely descriptions of the

symptoms Plaintiff experienced during the examination and reports from Ms. Gordillo, constituted mild findings, and the Court will not reweigh that evidence. Furthermore, regarding Dr. Preuss, the ALJ's decision to assign his functional assessment less weight than either the teachers' questionnaires or Dr. Preuss's examination reports is supported by Dr. Preuss's request to defer to Plaintiff's teachers and parent regarding whether Plaintiff had a marked limitation in this domain. The ALJ also noted that the State Agency reviewers found a less-than-marked limitation in this domain. This leaves only Ms. Jameson finding a certain marked limitation in this domain. As in *Ketelboeter*, the ALJ found that Ms. Jameson's opinion was inconsistent with her notes from her direct examinations of Plaintiff. The ALJ therefore appropriately weighed her opinion against the opinions from the State Agency reviewers.

In contrast, the ALJ erred in failing to explain his considerations of portions of the teachers' questionnaires which supported finding a less-than-marked limitation in the domain of attending and completing tasks over those which did not support such a finding. Whereas Plaintiff's argument regarding the functional assessments arguably invites the Court to reweigh the evidence before the ALJ, Plaintiff's claim regarding the teachers' questionnaires is predicated instead on the evidence the ALJ declined to consider. The ALJ noted that Ms. Wright found problems which "ranged from an obvious problem to a serious problem" in this domain. (Tr. at 21). Similarly, the ALJ noted that Ms. Steibel reported only slight to obvious problems. *Id*. However, the ALJ neglected to

mention that Ms. Ray also found serious problems in the domain of attending and completing tasks. *See* (Tr. at 22). Furthermore, the ALJ concludes that these records do not indicate a marked limitation, without explaining why the two questionnaires showing marked limitations in at least some aspects of this domain did not support finding a marked limitation in this domain overall. Accordingly, the Court finds that the ALJ erred in applying a "sound-bite approach" to the teachers' questionnaires. Because the ALJ erred in failing to consider evidence both in favor of and against his decision, including both the teachers' questionnaires and Ms. Jameson's extensive reports, the case requires remand. *See, e.g.*, *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012)(internal citation omitted)(finding that if an ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required).

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

After careful review of the record as a whole, the Court finds the Administrative Law Judge committed error in denying Plaintiff's application for disability benefits. The Commissioner's final decision denying Plaintiff's application for disability benefits is therefore **REVERSED** and **REMANDED** to the Commissioner for rehearing and

reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATE: March 29, 2021.**

Digitally signed
by Judge Sison 2
Date: 2021.03.29
09:50:17 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**